**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DISTRICT**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) |
| | ) Civil Action No.  1:08-civ-2576 (CCB) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CHRISTOPHER FULTZ | ) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RITE AID CORPORATION | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**PLAINTIFFS' MOTION TO EXCLUDE THE REPORT, TESTIMONY**
**AND OPINIONS OF DR. MICHAEL K. SPODAK**

COMES NOW Plaintiffs Christopher Fultz and the Equal Employment Opportunity Commission, by and through their attorneys, and hereby request that the Court enter an order excluding the expert report, testimony, and opinions of Dr. Michael K. Spodak.  In support of this Motion, Plaintiffs state as follows:

1.      Defendant has designated Dr. Michael K. Spodak, a forensic psychiatrist, under Federal Rule of Civil Procedure 26(a)(2)(B) to provide expert testimony at trial.

2.      The Court should exclude Dr. Spodak's purported opinions, report, and testimony because he seeks to provide: 1) a legal opinion on harassment; 2) an opinion regarding the reliability of an independent medical examination conducted in an entirely different medical specialty from his purported area of expertise; 3) a causation opinion which is unreliable because

it is based on illogical inferences drawn from speculative and erroneous assumptions that are not supported by the evidence or an expert report, but instead based on his own "common sense"; and 4) his report and testimony should still be excluded because any minimal probative value his opinions may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

      3.     This Motion is supported by good and substantial authority contained in the attached Memorandum of Points and Authorities.

      WHEREFORE Christopher Fultz and the EEOC, by and through their attorneys, respectfully request this Honorable Court grant their Motion to exclude the expert report, testimony, and opinions of Dr. Michael K. Spodak and for such other relief as law and justice require.

Respectfully submitted,

/s/_____
Bruce A. Fredrickson #02839
Jeremy P. Monteiro #17459
Webster, Fredrickson, Correia & Puth, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C. 20006
(202) 659-8510
(202) 659-4082 (fax)

Counsel for Christopher Fultz

/s/_____
Maria Luisa Morocco
U.S. Equal Employment Opportunity Commission
City Crescent Bldg
10 S. Howard St. Third Fl
Baltimore, MD 21201
(410) 209-2730
(410) 962-4270 (fax)

2

Counsel for the EEOC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DISTRICT**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| Plaintiff, | ) ) |
| and | ) Civil Action No. 1:08-cv-2576 (CCB) |
| CHRISTOPHER FULTZ | ) ) |
| Intervenor-Plaintiff, | ) ) |
| v. | ) ) |
| RITE AID CORPORATION | ) ) |
| Defendant. | ) ) |
| _____ | ) |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT, TESTIMONY AND OPINIONS OF DR. MICHAEL K. SPODAK**</u>

Plaintiffs Equal Employment Opportunity Commission ("EEOC" or "the Commission") and Christopher Fultz respectfully submit this Memorandum in support of their Motion to Exclude the Report, Testimony, and Opinions of Defendant Rite Aid's proposed damages causation expert, Dr. Michael K. Spodak.

## I. INTRODUCTION

Pursuant to 42 U.S.C. Section 1981a plaintiffs are seeking damages for the emotional distress arising from Defendant's discrimination against Christopher Fultz, including its actions in subjecting him to disparate treatment, unlawful medical examinations, and his retaliatory removal from his employment. Due to the psychological trauma of humiliation, harassment, victimization, stigmatization, and retaliation inflicted by Rite Aid, Mr. Fultz sought treatment for

depression from clinical psychologist, Jodi L. French, who diagnosed him with dysthymia disorder, or clinical depression.[1]

Defendant has designated Dr. Michael K. Spodak, a forensic psychiatrist, under Federal Rule of Civil Procedure 26(a)(2)(B), to rebut Plaintiffs' claims that Fultz' emotional harm is attributable to Defendant's actions.  *See generally* Ex. 1, Dep. of Michael K. Spodak and Ex. 2, Report of Michael K. Spodak.

In the Joint Pretrial Order, Rite Aid has stated:

> "Dr. Spodak will provide the opinion that Mr. Fultz' work restrictions and placement on short term disability did not result in a diagnosable mental illness or disorder because Mr. Fultz' symptoms of depression were not causally related or attributable to Rite Aid's work restriction.  The work condition described by Mr. Fultz would not be perceived as harassment by a reasonable employee.  Rite Aid also states that Dr. Spodak will opine that a physician performing an independent medical exam ("IME") on the suitability of a person to work in a certain environment should be thoroughly knowledgeable about the circumstance where the person is working and should not just rely on what the patient says.  Dr. Rowekamp's IMEs were more reliable than Dr. Lesser's opinions because Dr. Rowekamp was more familiar with the circumstances of Mr. Fultz' working conditions."  Joint Pretrial Order at 35.

The Court should exclude Dr. Spodak's purported opinions, report, and testimony because he seeks to provide 1) a legal opinion on harassment; 2) an opinion regarding the reliability of an independent medical examination conducted in an entirely different medical specialty from his purported area of expertise; 3) a causation opinion which is unreliable because it is based on illogical inferences drawn from speculative and erroneous assumptions that are not

---

[1]  During discovery, Plaintiffs disclosed Dr. French as a potential hybrid fact/expert witness, produced her files and produced her for deposition.  However, to date, Plaintiffs are not intending to call French as a witness at trial, as Fultz is in the unique position to testify with regard the emotional harm he suffered because of Rite Aid's discriminatory actions. Moreover, there is no dispute between Dr. French and Dr. Spodak that Mr. Fultz has experienced depression.  Defendant has indicated in its pretrial order that it intends to call French and to thereby further divert the jury's focus from the workplace issues and Rite Aid's decision-making with regard to Fultz. For the reasons stated in Plaintiff's Motion to Exclude All Evidence Thoughts Plaintiff-Intervenor Shared with Psychotherapist are seeking to limit the scope of any examination of French by Rite Aid to avoid any undue prejudice to Fultz.

supported by the evidence or an expert report, but instead based on his own "common sense"; and 4) his report and testimony should still be excluded because any minimal probative value his opinions may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

## II. ARGUMENT

A.   THE TRIAL COURT MUST BE VIGILENT IN EXLUDING EXPERT TESTIMONY THAT IS IRRELEVANT, UNHELPFUL OR UNRELIABLE.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, and provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.  Under Federal Rules of Evidence 702 and 403 and *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), trial judges must act as gatekeepers to ensure that "all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id*. at 589.  *See also Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001).  The proponent of the testimony bears the burden of establishing its admissibility.  *See Cooper*, 259 F.3d at 199 (*citing Daubert*, 509 U.S. at 592 n.10).

To fulfill its gate-keeping responsibility, the trial judge must perform a two-pronged analysis.  *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).   The first prong involves "an examination of whether the reasoning or methodology underlying the

expert's proffered opinion is reliable—that is whether it is supported by adequate validation to render it trustworthy." *Id.* (*citing Daubert,* 509 U.S. at 590 and n.9).  Then the court must analyze whether the opinion will help the trier of fact, which is generally a question of relevance or fit.  *Id.*  The Fourth Circuit has recognized that, "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.' " *Id.* at 261 (*quoting Daubert,* 509 U.S. at 595).  Further, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.* at 261 (*citing U. S. v. Dorsey*, 45 F.3d 809, 815-16 (4th Cir. 1995)).  As explained below, Spodak's testimony is neither reliable nor helpful.

B.     DR. SPODAK'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS PROPOSED EXPERT OPINIONS ARE UNRELIABLE AND UNHELPFUL.

To satisfy Rule 702's "reliability" prong, expert testimony "must be supported by appropriate validation." *Daubert*, 509 U.S. at 590.  As the Supreme Court has repeatedly held, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (*quoting Joiner v. General Electric Co*., 522 U.S. 136, 142 (1997)).  The Fourth Circuit has held that "[a] reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp*., 190 F.3d 244, 250 (4th Cir. 1999).  Thus, the trial court may not accept opinions from experts merely because the "expert says it is so." *Alevromagiros v. Hechinger*, 993 F.2d 417, 421 (4th Cir. 1993) (*quoting Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 421 (5th Cir. 1987)).  Moreover, the Fourth Circuit has repeatedly recognized that a court will not "credit an

expert witness who 'testifie[s] to no customs of the trade, refer[s] to no literature in the field, and [does] not identify the [relevant principles],' but merely [gives] 'his own subjective opinion.'" *Freeman v. Case Corp.*, 118 F.3d 1011, 1016 (4th Cir. 1997) (*quoting Alevromagiros,* 993 F.2d at 421).

1.   DR. SPODAK'S OPINION THAT MR. FULTZ' WORK CONDITIONS WOULD NOT BE PERCEIVED AS HARASSMENT BY A REASONABLE EMPLOYEE IS AN IMPERMISSIBLE LEGAL CONCLUSION AND OPINION AS TO FULTZ' CREDIBILITY.

Spodak's report proffers an inadmissible legal opinion from a psychiatrist by improperly attempting to put before the court his legal conclusion as to whether Fultz' perception that he was being harassed was reasonable.  Ex. 2 at 10.  The premise for Spodak's conclusion must be his interpretation of what constitutes unlawful harassment under the ADA, which cannot be permitted.   Courts have consistently held that expert opinions about legal issues that will determine the outcome of the case are inadmissible.  *See generally United States v. Sinclair,* 74 F.3d 753, 757 n. 1 (7th Cir.1996) (observing that Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions "about legal issues that will determine the outcome of a case," that is, "legal issues on which the judge will instruct the jury).  *Smith v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1246 (10th Cir.2000) (citations omitted).  Expert testimony on legal issues "crosses the line between the permissible and impermissible when it 'attempt[s] to define the legal parameters within which the jury must exercise its fact-finding function.'"  *Id.*

In addition to rendering a legal opinion on the meaning of harassment, Spodak's opinion also contains his opinion as to Fultz' credibility, *i.e.* Fultz' perceptions were unreasonable. However, in order to prevail on his claim for retaliation, Mr. Fultz must prove that he reasonably believed that he had been subjected to discrimination or retaliation when he engaged in protected

activity.  *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406-407 (4th Cir. 2005).  Spodak's

expert testimony as to Fultz' credibility would invade the province of the jury and is

inadmissible.  *Spencer v. General Electric Co*., 688 F. Supp. 1072, 1077 (E.D. Va. 1988).  It is

the jury's role to determine whether Fultz was reasonable in believing he had been discriminated

or retaliated against and Fultz' credibility is not an appropriate issue for Spodak's "opinion."

Therefore, Spodak's entire "opinion" on harassment must be excluded.

2.     DR. SPODAK'S OPINION THAT IT IS "MUCH MORE APPROPRIATE AND
RELIABLE" TO RELY ON AN INDEPENDENT MEDICAL EXAMINATION
CONDUCTED AT AN EMPLOYER'S REQUEST THAN AN OPINION FROM
AN EMPLOYEE'S PHYSICIAN IS AN IMPROPER ATTEMPT TO VOUCH
FOR AN EXPERT IN A DIFFERENT AREA OF SPECIALIZATION.

Spodak also opined, for the first time at his deposition[2] and without any indication in his

report,[3] that Dr. Rowekamp's opinion finding Fultz unfit for duty anywhere at the Perryman

facility was more reliable than the opinion of Fultz' treating neurologist, who opined that Fultz

was fit for duty with the restriction of no forklift driving and no climbing ladders.  Ex. 1 at 32-

33.  Initially, because Spodak never provided a supplemental report with regard to his claimed

opinion regarding the reliability of an IME opinion, the Court must exclude any such testimony

as to this purported opinion.  *See* Fed. R. Civ. Proc. 26(a)(2)(b), 37(c)(1).

Spodak further admitted that he has never done an IME in any area of specialization other

than psychiatry and, indeed, that he could not provide an IME in another area of medicine.  *See*

---

[2] He testified that he volunteered to offer this opinion when he met with Rite Aid's counsel the morning of his
deposition at a Dunkin' Donuts because in reviewing "the bases for the opinions by the various doctors who offered
opinions about Mr. Fultz's accommodations at work" and "in [his] experience doing evaluations and IMEs and
knowing the kinds of standards that are expected," it occurred to him that "the ones done at Rite Aid's request by
Dr. Rowekamp were more comprehensive and probably more reliable than the ones done by Drs. Krumholz or
Lesser."  Ex. 1 at 32, 60-61.

[3] Following his deposition, counsel agreed that to the extent he was going to offer this opinion, he would provide a
supplemental report so plaintiffs could depose him as to this opinion.  Spodak never supplemented his report.  *Id.* at
234-235.

9

Ex. 1 at 40.  Notwithstanding these admissions, he denied that his opinion regarding IMEs was limited to examinations conducted to assess a psychiatric condition.  *See id.* at 48-49.

It is well-established that an expert cannot "vouch" for an expert in a different area of specialization.  *See, e.g., Scott v. City of Chicago*, 724 F. Supp.2d 917 (N.D. Ill. 2010).  In *Scott*, the court excluded a psychiatrist's proposed expert testimony about the plaintiff's lack of damages because he was not qualified to "vouch" for one psychologist over another.  *Id.* at 922. The court noted that the psychiatrist's expertise was, "in [that] instance, a vice rather than a virtue, because it would impermissibly coat [the psychiatrist's] opinion with the patina of expertise, even though he acknowledge[ed] that he ha[d] chosen to credit [one psychologist's] opinions over those of [another psychologist] without possessing the professional know-how to do so."  *Id*.

Although couched as an expert opinion, Spodak's testimony about the relative reliability of independent medical examiners and treating physicians is an improper attempt to vouch for the credibility of Rite Aid's occupational physician, Dr. Rowekamp, upon whose opinions Rite Aid relied in terminating Fultz.  It is also an improper attempt to discredit the credibility of the Fultz' treating neurologist, Dr. Ronald Lesser, and the IME neurologist, Dr. Allan Krumholz, whose opinions Rite Aid rejected. Spodak testified that, "in general, [his] experience doing evaluations and IMEs and knowing the kinds of standards that are expected, that the ones done at Rite Aid's request by Dr. Rowekamp were more comprehensive and probably more reliable than the ones done by Drs. Krumholz or Lesser."  Ex. 1 at 60-61.  However, he admitted that he has never done an IME in any area of specialization other than psychiatry and, indeed, that he could not provide an IME in another area of medicine.  *Id*. at 40.  As in *Scott*, Dr. Spodak's "deposition

testimony has acknowledged his inability to comment on" Drs. Rowekamp, Krumholz, and Lesser's findings with regared to Fultz' fitness for duty "because he is not equipped to do so professionally." Yet he goes on to "vouch for" Dr. Rowekamp's opinion, over those of Drs. Krumholz and Lesser. *Scott,* 724 F.Supp.2d at 923.  Accordingly, Dr. Spodak's opinion is an improper attempt to vouch for an expert in a different area of specialization and should be excluded.

Finally, it is the jury's role to determine whether Rite Aid relied upon the best available medical evidence when it relied upon Dr. Rowekamp's opinion, not Spodak's.  *See Jarvis v. Potter*, 500 F.3d 1113, 1122 (10th Cir. 2007) (trier of fact determines whether employer adequately determined employee posed a direct threat).  The crux of the factual basis for his opinion are the following statements:

- It "makes common sense to me" that a seeing a workplace is far superior to seeing a photograph. Ex. 1 at 53.

- It is important to know from a collateral source other than Mr. Fultz about his fitness for duties with or without restrictions, again based on "far more of a common sense basis" as opposed to any medical basis. *Id.* at 53-54.

- If there is a question of reasonable accommodation or adjustments to be made in the work setting, common sense dictates that the person who is more qualified with regard to the work setting would be better qualified to answer that question. *Id.* at 57.

He testified that the basis for this opinion is his "years of experience" and, specifically, his observation that "in terms of looking at something that is more likely to be fair and balanced, they typically come from IME evaluators, not from patient physicians who are often advocates for the patient and have many times limited and sanitized information usually only provided by the patient." *Id.* at 33-34.  He was unable to identify any medical literature that supports his

11

position besides the ethical guidelines of the American Academy of Psychiatry, which he acknowledged merely recommend that dual agency be avoided.  *Id.* at 34-36.

As such, Dr. Spodak's undisclosed opinion on the reliability of an IME examination must be excluded.

3.   SPODAK'S CAUSATION OPINION IS THE PRODUCT OF ILLOGICAL INFERENCES DRAWN FROM SPECULATIVE AND ERRONEOUS ASSUMPTIONS THAT ARE NOT SUPPORTED BY THE EVIDENCE.

Spodak's causation opinions are the product of illogical inferences drawn from speculative and erroneous assumptions that are not supported by the evidence.  Spodak opined in conclusory fashion that Rite Aid's actions could not have caused Fultz' depression and that one of the other stressors in Fultz' life caused the depression.

There are three critical flaws in the analysis underlying Spodak's causation opinion; each is an independent reason to exclude his causation opinion as unreliable, unhelpful and misleading.

a.   Spodak Could Not Explain Why Rite Aid's Actions Are Not The Sole Cause Of Fultz's Depression.

First, Spodak failed to specifically explain why Rite Aid's actions are not the sole cause of Fultz's depression.  In *Cooper*, the Fourth Circuit recognized that "a differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation."   259 F.3d at 202 (*quoting Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265-66 (1999)(internal citation omitted).  "Thus, if an expert utterly fails to consider alternative causes or *fails to offer an explanation for why the proffered alternative cause was not the sole cause*, a district court is justified in excluding the expert's testimony."  *Id.* (*citing Westberry*, 178 F.3d at 265-66 (*citing In re Paoli R.R. Yard PCB Litig.*,

35 F.3d 717, 758 n.27 (3d Cir. 1994) (emphasis added)).  Courts in the Fourth Circuit routinely exclude the causation opinions of experts who fail to sufficiently explain why the proffered alternate cause is not the sole cause.  *See, e.g., id.* at 200-04; *Oglesby,* 190 F.3d at 250-51; *Shreve v. Sears, Roebuck & Co.,* 166 F. Supp.2d 378, 397 (D. Md. 2001).

When asked to explain the basis for his conclusion that "any one [] or some combination of those things was the cause of [Mr. Fultz's] depression and not his termination from Rite Aid," Dr. Spodak invoked his experience and vaguely alluded to unspecified literature, stating:

> [I]n my opinion, from experience and from review of the literature and other things that I've seen published, [they] are the type of things that likely go into [] causing depression.  Add to that that the kind of things Rite Aid did [] are not the cause of mental or emotional illness.  So you've got the fact that the things Rite Aid did doesn't cause illness.  You've got all these other things that does cause illness.  You've got the prioritization of what causes it more likely than other things as far as risk factors that all added together is the basis.

Ex. 1 at 212-13.  Nevertheless, when pressed as to whether he had "arrived at an opinion *with any degree of medical certainty* as to the [] *specific* causes of any depression that Mr. Fultz suffer[ed]," he conceded that he could not say "this is the cause" and that he could only "say these are the kind of things an individual was under in terms of risk factors or things that would likely be kind of in a priority list of the type of things that would lead to depression." *Id.* at 209- Dr. Spodak's own testimony establishes that being terminated and the related loss of income and self-esteem can cause depression.  *See id.* at 138, 148; 218-19.  Indeed, he admitted that in his "professional opinion" the loss of employment can result in depression and that he has treated patients who suffered depression as a result of being terminated.  *See id.* at 138, 148.  Spodak was further unable to point to any specific literature, studies, or principles that supported his

13

assertions either that the discrete employment actions taken by Rite Aid do not cause depression or that the factors he identified do cause depression.  Further, he did not specifically explain why he concluded that the factors he identified "are far stronger contributors to any type of depression Mr. Fultz may have developed." *Id.* at 209, 211-12.

Perhaps not surprisingly, absent in his analysis was any consideration of Mr. Fultz's termination, serial fitness for duty examinations, and denial of promotions and their financial and psychological impact, as Spodak never received Fultz' complaint, which would have informed Spodak of the complete nature of Mr. Fultz' claims and damages.  *Id.* at 61, 75, 77.  Instead, Rite Aid's counsel "outlined the scope of the requested evaluation" and "Spodak relied on [Rite Aid's counsel] to send [him] whatever he thought was relevant." *Id.* at 23, 29, 66.

He admitted that he erroneously assumed that Mr. Fultz received disability benefits after Rite Aid placed him on leave and that he elected not to return to work at Rite Aid because he found another job.  *See, e.g., id*. at 117 ("I assume they had short-term disability benefits.  I think I read that somewhere and that that was the status in which he went out."); 119 ("I saw I believe an e-mail stating that he was being offered a job to return to Rite Aid and he declined the offer and that was the end of his employment there."); 120 ("[H]e told the people he found another job, he continued getting disability benefits despite working."); 204 ("I saw Mr. Fultz in 2009 after he had already been terminated from Rite Aid, after I guess he refused to go back.").

Contrary to Spodak's beliefs, Mr. Fultz did not receive disability benefits because his treating physician, Dr. Lesser, would not complete paperwork certifying that he was unable to work, and Mr. Fultz then tried repeatedly to return to work but Rite Aid refused.  *See* Pls, Joint Statement of Disputed Facts In Support of Opposition for Summary Judgment at pp. 29-33 at

exs. 19, 58-59, 61-62, (ecf. nos. 75, 75-19, 75-58 through 75-59, and 75-61 through 75-62 (incorporated herein).   Nor was Spodak asked by Rite Aid to consider whether Rite Aid's discriminatory refusal to promote Fultz or serial fitness for duty examinations could have caused the depression.

Despite these admissions, Dr. Spodak clung to the opinions stated in his report, maintaining in conclusory fashion, that each of the discrete employment actions referenced in the opinions is not the "type of act [that] in and of itself is the cause of a mental illness."  *See, e.g.,* Ex. 1 at 148.  *See generally id*. at 145-49; 192-96; 212-19.   For example, he reaffirmed his opinion that "the act of being placed on short-term disability by Rite Aid did not result in or cause" Mr. Fultz to develop "a diagnosable mental illness."  *See* Ex. 2 at 10.  *See also* Ex. 1 at 145-49; 192-96.  Although he confirmed that he is opining that Mr. Fultz "being placed on short-term disability did not result in his developing a diagnosable mental illness or disorder," *id.* at 194, he admitted that this opinion was "not driven by the facts of this case" and was "kind of a standalone" or "general opinion."  *Id.* at 148-49.  He testified that the opinion is based on the absence of any studies or literature or anything in his experience establishing that the act of placing someone on short-term disability "in and of itself" is the type of act that causes mental illness.  *See id.* at 146-48.

However, when confronted about his failure to consider the fact that Mr. Fultz did not receive disability benefits, he reversed course, stating:

> If he didn't have money, the cause of his not having money, would it be because he is a spendthrift or because he hasn't saved over the years?  Just because someone does not get money from a specific job doesn't necessarily mean that that should result in any mental illness because the accumulation of your personal wealth is something that goes on throughout your entire life.  That's not something that happens in a snapshot.

*Id.* at 193.   Then, after he testified that there is no literature establishing that being placed on short-term disability causes mental illness and was asked if there is literature showing that being terminated can cause depression, he changed course yet again, responding:

> [T]he short answer is yes but not really because when you look at the literature it's not the, it's not the, it's not the fact of the termination.  *It has to do with the individual's perception of entitlement, the individual's perception of what they may have put in the job or not, the individual's self-confidence, self-esteem….*  So the mere act of termination, in my opinion, is not the cause of a condition.  It's what that represents symbolically in people….  A lot of the people I see want to stay off of work.  They're delighted when somebody puts them out of work and they don't have to go back for a time.  *So it's a very individualized thing.*  But I've never seen anything that said that the actual act itself—even though I said earlier that yeah, termination can cause depression in the sort of process sense that *if someone is dealing with becoming terminated and a lot of the things that go around that such as loss of income and maybe self-esteem and other things, that can sure end up with somebody becoming depressed.*  But it's not like a light switch where terminated, ah, depression.

*Id.* at 218-19.   Only moments before offering this testimony, Dr. Spodak acknowledged that Mr. Fultz had "these issues where he feels—he has a *perception* of feeling unappreciated, of being retaliated against, [and] of feeling harassed."   *Id.* at 211.   Furthermore, when specifically confronted about the fact that Mr. Fultz "was *not* delighted to be put out of work," he initially admitted that "[a]s far as [he knew], [Mr. Fultz] believed that there was nothing wrong with him and [that] he could work without any difficulty" and that "from [his] evaluation of [Mr. Fultz], the only thing he seemed to agree with was that Rite Aid was justified in restricting his driving a forklift."   *Id.* at 219.

At bottom, it is evident that Spodak merely inferred that Rite Aid's actions did not cause Fultz's depressive symptoms simply because other factors that could theoretically have contributed.   In *Oglesby*, the Fourth Circuit affirmed exclusion of a causation opinion precisely

because the proposed expert "could only speculate as to a possibility which was no more likely than other available possibilities." 190 F.3d at 251. As in *Oglesby*, here, Spodak is attempting to render an opinion that Rite Aid's actions did not cause Fultz's depression when, in fact, he can only speculate that any one of the other factors he has identified is a possible cause of Mr. Fultz's depression. However, as a matter of simple logic, the mere existence of other causative factors – including events far remote in time to the actions at issue -- is not sufficiently probative to infer a lack of causation as to Rite Aid's actions.

Accordingly, Dr. Spodak's causation opinion should be excluded as unreliable and unhelpful.

> b. Spodak Did Not Account For And Reliably "Rule Out" Mr. Fultz's Termination As A Potential Cause Of His Depression.

Second, and relatedly, Spodak failed to account for the termination of Fultz' employment, Rite Aid's failure to promote Fultz, and Rite Aid sending Fultz for serial medical examinations. To be admissible, a proposed causation opinion must "take serious account of other potential causes." *Cooper,* 259 F.3d at 202 (*quoting Westberry*, 178 F.3d at 265-66 (internal citation omitted)). Courts in the Fourth Circuit consistently exclude the causation opinions of experts who fail to consider and account for obvious alternative causes. *See, e.g., Id.,* 259 F.3d at 202 (affirming exclusion of medical expert's opinion that defective medical device caused the plaintiff's surgical problems because "[i]n the face of medical literature and [the plaintiff's] own records" the expert "categorically dismissed any suggestion" that smoking was the cause of the problems); *Shreve,* 166 F. Supp.2d at 396-97 (excluding engineer's opinion that defect in snow blower caused the plaintiff's injuries because the expert "did not consider any

possibility of human error contributing to [the plaintiff's] accident, even though he acknowledged that it was a possible explanation.").

Spodak admits that he wrongly assumed that Mr. Fultz received compensation from disability insurance after Rite Aid removed him from his employment and that Fultz voluntarily elected not to return to work because he found another job when, in fact, Fultz never received disability benefits because his treating physician would not certify that Fultz was unable to work and thereafter Fultz repeatedly tried to return to work but Rite Aid refused. *See* Ex. 1 at 117, 204. As a result, Spodak admittedly failed to account for, or even consider, Fultz's termination or its financial impact when he determined that Fultz's depressive symptoms "were not causally related or attributable" to Rite Aid's actions, even though Spodak's own testimony establishes that being terminated and the related loss of income and self-esteem can cause depression. *See id.* at 138, 148; 218-19.

In *Foster v. Legal Sea Foods, Inc.*, No. 03-2512, 2008 WL 2945561 (D. Md. July 25, 2008)(Blake J.), this Court excluded a medical expert's opinion that undercooked or raw mussels caused the plaintiff's Hepatitis A because, "[b]y not even identifying other sources, [he] had no opportunity to minimize them, which rendered his opinion that the defendant's mussels "were more likely than not the cause of the [plaintiffs'] illness" "unreliable and potentially misleading to the jury." *Id.* at *13. As in *Foster*, by not even considering the fact that Mr. Fultz was terminated or the related psychological and financial consequences (all of which he concedes can cause depression), Spodak's opinion that the factors he had identified "are far stronger contributors to any type of depression Mr. Fultz may have developed," ex. 1 at 209, 211-12, is both "unreliable and potentially misleading to the jury."

18

Further, despite the fact that his causation opinion was obviously premised on erroneous assumptions regarding undisputed facts that are central to the case, Spodak did not alter his opinion when confronted with his errors. *See Oglesby,* 190 F.3d at 250-51 (noting that expert whose causation opinion the trial court properly excluded as unreliable did not alter his opinion at all when confronted with the fact that his theory was apparently premised on baseless and erroneous factual assumptions).

Spodak attempted to suggest that he properly excluded Mr. Fultz's termination and the related financial consequences from consideration because he was only opining about the specific employment actions referenced in his report. *See generally* Ex. 1 at 145-149; 191-96. However, even if there was a meaningful difference between being involuntarily placed on medical leave without pay and being terminated (which there is not), this suggestion makes little sense in light of Spodak's own concession that "it would be very difficult [] to tease [] out "the impact of being placed on short-term disability leave" because "when people are placed on short-term disability they have some other problem going on." *Id.* at 195-96. In other words, even taking his opinions at face value, even he seems to recognize that it is not possible to cull out the discrete psychological impact of placing someone on short-term disability leave from the psychological consequences of other contemporaneous factors.

Furthermore, even if Spodak's causation opinion is somehow reliable notwithstanding his utter failure to consider an alternate cause that he admits causes depression "in his professional opinion," *id.* at 138, Spodak's causation opinion should still be excluded because it does not fit the facts and issues involved in this case and is, therefore, irrelevant and unhelpful. Although EEOC and Fultz allege that Rite Aid violated the ADA in several ways, at its core this is a

19

wrongful termination case.  However, Spodak essentially proposes to testify that Rite Aid's actions did not cause Mr. Fultz's depression *if* you assume that Rite Aid merely restricted Mr. Fultz's job duties and placed him on short-term disability leave—that is, if you ignore Mr. Fultz's termination, denial of promotions, and serial fitness for duties.

It also bears noting that Spodak appears to have treated some factors that may be attributed to Rite Aid as independent contributors to Mr. Fultz's depression.  For instance, Spodak testified that any humiliation and embarrassment Mr. Fultz suffered in connection with his seizures, his feelings of being harassed and retaliated against were contributors to his depression separate and apart from anything that might have been done by Rite Aid in ending his employment. *Id*. at 211-13.  By failing to properly account for, and effectively ignoring, these central issues, he has not addressed all of the claims and possible psychological damages.  In other words, his opinion is simply too narrowly tailored and parsed to help the jury determine whether, and to what extent, Rite Aid's actions caused Fultz psychological harm.

At the same time, his opinion is simply too vague to be helpful because, at best, it boils down to the fairly unremarkable observation that there were other factors, some of which are obvious, *e.g.,* the death of Mr. Fultz's mother in 2007, which may have contributed to Mr. Fultz's depression.  Rite Aid's counsel can explore any potential mitigating factors in cross-examining Fultz with appropriate safeguards in place.  Further, the jury is fully capable of resolving these issues for itself.  In short, because Spodak failed to account for Mr. Fultz's termination, his causation opinion should be excluded as unreliable, irrelevant and misleading.

      c.  Dr. Spodak Lacked A Sufficient Factual Basis To Reliably "Rule In" Driving As The Most Likely Cause Of Mr. Fultz's Depression

Third, Spodak claimed for the first time in his deposition, that the fact that Mr. Futz was driving, despite his seizures, was the most likely cause of his depression.  Spodak's lengthy exposition on Fultz' driving was not surprising, despite any mention of this alleged "stressor" in his report, as Defendant's counsel had fed Spodak numerous articles on driving and epilepsy months before the completion of his report.  Having admitted that Fultz' driving did not motivate any action taken against him, Rite Aid fed Spodak the driving information in order to try to bootstrap its driving defense into the case.  *See* Ex. 3, Rite Aid Responses to Requests for Admission Nos. 6-8 (Apr. 15, 2010).

Spodak admittedly did not ask Mr. Fultz whether driving was causing him stress during his interview or even identify driving or compliance with DMV reporting requirements as a "factor to be considered" in his report.  Rather, in the days before his deposition, he and his fiancé looked up the Maryland driving laws on the Internet.  Ex. 1 at 87-100.  Spodak then repeatedly testified that driving was Fultz's most significant collateral stressor and the most significant contributor to any type of depression he was suffering.  *See generally id.* at 209-12. *See*, *e.g., id.* at 92 ("One important collateral source is if you're driving around worried that you [] could lose your license at any time because of your medical condition, that would certainly be a huge stressor in someone's life."); 209 ("The one [factor]I didn't list [in my report], which I probably should have because I think it's also extremely significant, is this whole driving thing where he's driving his car and engaging in this very unpredictable behavior that could at any time cause him to have a fatal accident for himself or anyone else."); 210 ("I think first and

21

foremost [] would be someone who is leaving the house every morning having these seizures [] and driving around in the car every day.").

He impermissibly weighed in heavily on Fultz' credibility, testifying that he thought it was "very irresponsible of Mr. Fultz to be driving around with the condition he's got" and "probably illegal for him to be driving without reporting to the DMV the nature of [] his seizure disorder" and that "[i]t seemed consistent with Mr. Fultz's efforts to minimize and understate the severity of his condition" and his own "opinion that whatever emotional difficulties [Mr. Fultz] suffered [] were from collateral sources."  *Id.* at 87-88, 92.  Although he testified that "the law speaks for itself and Mr. Fultz's conduct speaks for itself," he conceded that "issues concerning driving and epilepsy are not within his expertise as a psychiatrist," that he simply "assume[ed] that that [wa]s an important collateral stressor," and that he never asked Mr. Fultz if he was "stressed about driving," claiming that "[i]t's just [his] general knowledge as a psychiatrist from years of experience that those kind of things are huge stressors" and that " [i]t's so self-evident." *Id.* at 89-91; 93-95; 203.

Spodak lacked a sufficient factual basis to reliably conclude that driving was the most likely cause of Mr. Fultz's depression.  In order to rule in a specific cause from the universe of potential causes, an expert must be able to establish *both* general and specific causation.  *See, e.g., Foster,* 2008 WL 2945561, *12.  In *Foster,* the court concluded that the expert lacked a sufficient basis for ruling in the defendant's mussels as the cause of the plaintiff's Hepatitis A, in part, because he "lacke[ed] sufficient evidentiary support" for his "suspicions" about how the mussels may have become contaminated; thus, his general causation conclusions were "simply too speculative to be reliable."  *Id.* at * 13.

Spodak testified that he believed driving was Fultz's most significant collateral stressor and the most likely cause of Mr. Fultz's depression based on his general knowledge from years of experience as a psychiatrist that "those kind of things are huge stressors" and his speculative assumption that Mr. Fultz was driving illegally.  *See* Ex. 1 at 92, 94-95, 209-10.  Thus, even assuming that his testimony is sufficient to establish general causation (which it is not), his belief that driving was Fultz's most significant stressor is simply too speculative to reliably rule in driving as the most likely cause of Fultz's depression.

Because Spodak was unable to identify with any specificity that Fultz' driving caused his depression, his opinion should be excluded.

C.     SPODAK'S TESTIMONY SHOULD BE EXCLUDED BECAUSE ANY MINIMAL PROBATIVE VALUE HIS PROPOSED EXPERT OPINIONS MAY HAVE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES AND MISLEADING THE JURY

Even if Spodak's proposed expert opinions were reliable (which they are not), his report and testimony should still be excluded because any minimal probative value his opinions may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.  The district court has broad discretion to decide whether expert testimony is helpful to the jury or whether it instead is within the common knowledge of the jurors, and whether it would be unfairly prejudicial, confusing or misleading under Rule 403.  *See generally United States v. Dorsey,* 45 F.3d at 815; *United States v. Portsmouth Paving Corp*., 694 F.2d 312, 323 (4th Cir.1982).

As set forth more fully above, Spodak's causation opinion is misleading and irrelevant because he failed to account for or even consider Mr. Fultz's termination, fitness for duties, or Rite Aid's discriminatory denial of promotions.  It is also highly prejudicial insofar as Dr.

23

Spodak's *post hoc* opinion that Mr. Fultz's depression was more likely caused by the stress of driving appears to be a nothing more than an attempt by Rite Aid and Rite Aid's counsel to use him as a mouthpiece for discrediting Fultz with regard to an issue that is wholly unrelated to Defendant's employment decisions about him and to play upon fears of persons with epilepsy. It cannot go unnoticed although Rite Aid's counsel fed Spodak voluminous articles about driving and epilepsy, his report contained no opinion that driving was a stressor for Fultz. It was only in the days immediately before Spodak's deposition, when he was meeting with Rite Aid's counsel, that he suddenly because focused on the DMV reporting requirements for persons with epilepsy.

The Fourth Circuit has recognized that the opinion of an expert who can be shown to have adopted the attorney's opinion as his own should be accorded less weight.  *See Elm Grove Coal Co. v. Director, O.W.C.P.*, 480 F.3d 278, 301 (4th Cir. 2007) (noting that "an expert who can be shown to have adopted the attorney's opinion as his own stands less tall ... than an expert who has engaged in painstaking inquiry and analysis before arriving at an opinion.") (*quoting Occulto v. Adamar of New Jersey, Inc.*, 125 F.R.D. 611, 615-16 (D.N.J. 1989)).  *See also Musselman v. Phillips*, 176 F.R.D. 194, 200 (D. Md. 1997) ("It cannot seriously be denied that the fact that an attorney has interjected him or herself into the process by which a testifying expert forms the opinions to be testified to at trial affects the weight which the expert's testimony deserves."); *Mack v. AmerisourceBergen Drug Corp.,* 671 F. Supp.2d 706 (D.Md. 2009) (observing that "even when it is deemed admissible, expert testimony that has been influenced by a hiring attorney is often afforded less deference by a fact-finder.); *Malletier v. Dooney & Bourke, Inc.,* 525 F.Supp.2d 558, 666 (S.D.N.Y. 2007) (excluding testimony because it was

24

"nothing but conduit testimony from an expert on a matter outside his field of expertise," and, [a]s such it [was] unreliable and would not assist the jury.").

The fact that the probative value of Dr. Spodak's testimony is substantially outweighed by the danger of unfair prejudice and misleading the jury is even more clear given the improper purpose of at least some aspects of his causation opinion. Further, in a case in which Rite Aid's assessment of potential threats to workplace safety is a primary issue for the jury to consider, any "expert opinions" from Spodak regarding epilepsy safety issues outside of the workplace – and the his related commentary on hypothetical fatal highway accidents and moral  approbation of Fultz -- will simply serve confuse and mislead the jury in a manner that will be unduly prejudicial to the Plaintiffs.

Accordingly, Spodak's report and testimony should be excluded because the probative value of his testimony is substantially outweighed by the danger of unfair prejudice and

## IV. CONCLUSION

For the foregoing reasons, Spodak's report, testimony, and opinions should be excluded in their entirety.

Respectfully submitted,

_____/s/_____
Maria Luisa Morocco
U.S. Equal Employment Opportunity Commission
City Crescent Bldg
10 S. Howard St. Third Fl
Baltimore, MD 21201
(410) 209-2730
(410) 962-4270 (fax)

Counsel for the EEOC

25

_____/s/_____
Bruce Frederickson #02839
Jeremy P. Monteiro #17459
Webster, Frederickson, Correia & Puth, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C. 20006
(202) 659-8510
(202) 659-4082 (fax)

Counsel for Christopher Fultz

**CERTIFICATE OF SERVICE**

I hereby certify that on the **18th day of August 2011**, a copy of the foregoing Plaintiffs'
Motion in Limine and Memorandum of Law in Support of Motion in Limine to Exclude Report,
Testimony and Opinions, with Proposed Order, was filed electronically.  In compliance with
Local Rule 102(1)(c), service required by Fed. R. Civ. P. 5(a) was made, as notice of electronic
filing will be electronically mailed to the following:

Maria Luisa Morocco
U.S. Equal Employment Opportunity Commission
City Crescent Bldg
10 S. Howard St. Third Fl.
Baltimore, MD 21201
(410) 209-2734
(410) 962- 4270 (fax)
maria.morocco@eeoc.gov

James A. Rothschild
Ryan K. Bautz
Anderson, Coe & King, LLP
201 N. Charles St., Suite 2000
Baltimore, MD 21201
(410) 752-1630
(410) 752-0085 (fax)
rothschild@acklaw.com
bautz@acklaw.com

/s/ _____
Jeremy P. Monteiro
Webster, Frederickson, Correia & Puth, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C. 20006
(202) 659-8510
(202) 659-4082 (fax)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DISTRICT

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) |
| Plaintiff, | ) Civil Action No.  1:08-civ-2576 (CCB) ) ) |
| and | ) ) |
| CHRISTOPHER FULTZ | ) ) |
| Intervenor-Plaintiff, | ) ) |
| v. | ) ) |
| RITE AID CORPORATION | ) ) |
| Defendant. | ) ) |
| _____ | ) |

**ORDER**

    This cause having come before this Court upon Plaintiffs EEOC and Christopher Fultz' Exclude the expert report, testimony, and opinions of Dr. Michael K. Spodak, it is this _____ day of _____, 2011, hereby ORDERED, that the Motion to Exclude the expert report, testimony, and opinions of Dr. Michael K. Spodak, be, and the same hereby is, granted.

                                           _____
                                            Judge Catherine C. Blake