IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and CHRISTOPHER FULTZ | ) ) ) | |
| Plaintiffs, | ) ) ) | . |
| | ) | Case No: |
| v. | ) | 08-CV-02576-CCB |
| | ) ) | |
| RITE AID CORPORATION | ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION SEEKING CLARIFICATION OF THE COURT'S RULING WITH REGARD TO DEENDANT'S DIRECT THREAT AFFIRMATIVE DEFENSE

I. <u>Introduction</u>

Plaintiffs U.S. Equal Employment Opportunity Commission and Christopher Fultz hereby request that the Court clarify its oral ruling, set forth in ECF No. 175 at pp. 87-88, and exclude testimony and all argument that Rite Aid's decision-makers considered "other objective evidence" (and not just the opinion of its contract physician – Dr. Rowekamp) in making the decision to remove Fultz from the workplace in January 2008. The Court must preclude introduction of this evidence at trial because Rite Aid has failed to make a proffer ordered by the Court to support the introduction of such evidence. *See id.* at p. 87 (Court telling counsel for Rite Aid to identify to EEOC and the Court record evidence supporting argument that decision-makers relied on objective evidence other than Dr. Rowekamp's opinion). Further, such evidence cannot be introduced in good faith because Defendant has admitted, through its

interrogatory answers and through the party admissions of its decision-makers that Defendant relied only upon the opinion of Dr. Rowekamp, in making the decision to remove Fultz from the workplace.  At the hearing on the Motions in Limine, Defendant's counsel alluded to various factual scenarios allegedly demonstrating that other objective evidence was considered.  *See id.* at pp. 8-10. However, this claim – that other objective evidence was in fact relied upon by Rite Aid's decision-makers – is not supported by the record. Therefore, the evidence Defendant introduces at trial to support its direct threat affirmative defense must be limited to its reliance on Dr. Rowekamp and the information actually considered by Dr. Rowekamp.

II.     Trial testimony that the decision-makers relied on "other objective evidence" must be excluded because Defendant has failed to comply with the Court's Order <u>to make an evidentiary proffer to support the introduction of such evidence.</u>

During the September 27, 2011, oral argument on the plaintiffs' motions in limine, Defendant's counsel made clear his desire to enter into evidence all descriptions of Fultz's seizures during the course of his 10-year career, however unrelated they were to Defendant's decision to remove him:

It is the defendant's position that information, which was not considered by Rite Aid's decision makers at the time, would be admissible to counter plaintiffs' evidence.

*Id.* at p. 8. The Court thereupon correctly noted its disagreement with Defendant's position. *Id.* at pp. 8-9. Thereafter, Defendant's counsel made numerous representations that Defendant plans to introduce evidence that its decision-makers utilized "other objective evidence" (and did not just rely on Dr. Rowekamp's opinion) in making the decision to remove Fultz from the workplace in January 2008.  Plaintiffs responded to these representations by arguing that such testimony was foreclosed because party admissions demonstrate that Defendant's decision-makers relied

exclusively on Dr. Rowekamp's opinion. *Id.* at p. 86. The Court responded to the parties'

arguments by ordering Defendant by September 30, 2011 to:

> point out to the EEOC [and the Court] where [Defendant] already had evidence in
> the record that decision makers considered objective evidence in addition to what
> was in Dr. Rowekamp's report.

*Id.* at pp. 87-88. The Court added that "the first place we are going to look is to the testimony of

the actual decision makers as to what they considered." *Id.* at pp. 75-76.

On October 5, 2011, Defendant filed correspondence with the Court identifying Tim

Peifly, Ted Armstrong, and Dan McDaniel as the decision-makers with regard to Fultz' removal.

*See* ECF No. 165. Defendant further represented that each of these decision-makers "were aware

of and took into account Mr. Fultz' seizure history at the time the decision was made to follow

Dr. Rowekamp's recommendation." *Id.* Defendant additionally stated information related to

Mr. Fultz' seizures was provided to the decision-makers from various sources, including Jennifer

Lazor and Corey Williams. However, Defendant failed to provide any evidentiary support from

the record for the claim that its decision-makers relied on any "objective evidence," *other* than

Dr. Rowekamp's opinion.

III.   Party admissions preclude defendant from introducing in good faith testimony
       that its decision-makers relied on "other objective evidence."

The reason why Defendant has not provided such record evidence is because it cannot, as

party admissions have been obtained from each of the above-identified decision-makers that they

*only* considered Dr. Rowekamp's opinion in deciding to remove Fultz. Therefore, any testimony

that Defendant's decision-makers relied on "other objective evidence" cannot be elicited in good

faith. In response to the interrogatory asking Defendant to "[i]dentify each reason why Mr. Fultz

was placed on administrative leave or short term disability in 2008 . . .," Defendant responded, in

relevant part, as follows:

> ... Rite Aid requested that Dr. Rowekamp examine Mr. Fultz and make a determination
> as to his fitness for duty . . . .  Dr. Rowekamp determined that Mr. Fultz was not fit
> for duty due to safety concerns posed by [Fultz'] seizures. *Dr. Rowekamp's opinion was*
> *the basis for Rite Aid's decision.*

 Ex. 1, Def. Resp. to Interrog. 5 (emphasis added).

Consistent with the admission in Defendant's interrogatory response, Defendant's decision makers all testified that they relied upon Dr. Rowekamp's assessment of whether Fultz could work at the distribution center and did not make any additional assessment of his fitness for duty. Timothy Peifley, General Manager for the Perryman facility, testified that during a single conference call, the decision makers -- *i.e.*, Peifley, Dan McDaniel, human resources director for the Perryman facility, and Ted Armstrong, the corporate human resources director -- decided to remove Fultz from the workplace based on Dr. Rowekamp's recommendation:

> Q. [W]alk me through everything you know for sure was said at that
> meeting.
> A.  The only thing I know for sure that was said was that it was agreed that we would
> follow the doctor's recommendation and not allow Chris to work in the facility.
> Q. Did anybody voice any opposition to that recommendation?
> A. Not that I can recall anybody, no. That's why we had everybody on the  phone, to get
> everybody from all sides of it to agree that we're doing the right thing.
> Q. Okay. And how was it determined that it was the right thing to do, what
> discussion was --
> A. Pretty much following the doctor's assessment.
> Q. Okay. Other than, you know, agreeing that the doctor has -- this is the doctor's
> recommendation and we're going to follow it, what
> other things were discussed?
> A. I don't recall anything else that was discussed.
> Q. Okay. So that's all you know was discussed for sure?
> A. For sure, yes.

Ex. 2, Peifley Dep., at pp. 126-127. Further, during his deposition, Peifley could not recall reading any reports regarding Fultz's seizures nor could he recall anything that Safety Director Williams may have told him about any seizure. *Id.* at 71.

Ted Armstrong, the corporate human resources director, similarly testified that he accepted Dr. Rowekamp's opinion because, "[w]e rely on the doctors. I mean, that's why we have them, that's what we use them for." Ex. 3, at pp. 196-197. He stated that the decision to disallow Fultz from continuing to work was based on a "passing comment that Dr. Rowekamp had seen" Fultz and deemed him unfit for duty. *Id.* at pp. 194-196. Further, Armstrong admitted that he did not question Dr. Rowekamp's opinion and there was no policy that the HR professionals at Rite Aid were required to follow, other than relying on the doctors, before someone is determined to be unfit for duty. *Id.* at pp. 196-197.

In addition, HR Director McDaniel repeatedly testified that Rite Aid's management made its decision to remove Fultz from the workplace based on Dr. Rowekamp's opinion, and that doing so was consistent with Rite Aid's practice of relying on the opinions of the doctors who perform fitness for duty evaluations. *See* Ex. 4, at p. 250 ("We made our decision *purely based on what Dr. Rowekamp said.* I'm not an expert on why.") (emphasis added); *see also id.* at p. 233 ("[Rowekamp's] the doctor, you know, *so it's not that Rite Aid was sitting around trying to figure, out whether Chris should work there or not.*") (emphasis added); *and id.* at pp. 85-86 (after doctor did medical analysis there was no additional ADA analysis done by HR department to determine whether employee posed a safety risk).

Because of these party admissions, Defendant cannot, in good faith, now offer evidence that its decision-makers relied on factors other than Dr. Rowekamp's opinion when they made the decision to remove Fultz from the workplace in January 2008, and when they subsequently denied his requests for reinstatement.

IV.    Defendant must be foreclosed from introducing irrelevant and prejudicial testimony about information about seizures that the decision makers did not rely <u>upon</u>.

As is indicated above, Defendant is unable to do what the court has required:  provide evidence linking management's knowledge of Fultz's seizures with the decision to remove him from the workplace.  However, this does not settle the matter.  The Court must also foreclose any efforts by Defendant that would have the result of misleading or confusing the jury in its analysis of the direct threat evidence.  Plaintiffs are concerned about this issue because in his argument to the Court defense counsel stated the following:

> [W]e certainly need to be in a position to demonstrate to the jury that the decision makers were getting information and had objective information from which they *could* make a determination, they thought a reasonable determination, whether Mr. Fultz was a danger to himself or others.

ECF No. 175, at p. 71 (emphasis added).  Thus, it appears that Defendant may try to introduce information that decision makers received over the years about Fultz's seizures and then argue to the jury that this constituted "other objective evidence" relied upon in the direct threat assessment.  For example, Defendants' Exhibit List contains numerous records from as early as 2004 from lower level Rite Aid employees which depict Mr. Fultz' seizures but were never provided to Dr. Rowekamp.  *See* ECF No. 226 (Def.'s Prop. Trial Exhs.) Nos. 17 (statement from Richard Krall 4/26/06); 21 (e-mail from Corey Williams 9/5/2006); 24 (e-mail from Corey Williams 12/27/06); 26 (Chris Fultz History); 35 (e-mail from Darla Harkins 12/24/07); 38 (Incident Report 1/2/08 from Richard Johnson to J. Lazor); 40 (e-mail from K. Brown to J. Lazor); 50 (Memo written by J. Lazor); 64 (Keith Frost e-mail 12/27/04); 65 (Corey Williams e-mail 9/25/06); 66 (D. McDaniel e-mail 2/5/07); 68 (M. Wood memo 4/14/07) (attached collectively as Exhibit 7).

This evidence as well as testimony from any such employees must be foreclosed pursuant to Federal Rules of Evidence 401 and 403. First, information about Fultz's seizures that was not relied upon by either Dr. Rowekamp, *i.e.* is not reflected in his file, or relied upon by the decision-makers is not relevant to the issue of whether Fultz posed a direct threat in the workplace.  Second, the introduction of evidence related to seizures that may have been known to decision makers *but was not relied upon* by them will hopelessly confuse and prejudice the jury's direct threat analysis.  Moreover, any such evidence constitutes inadmissible hearsay (and in some instances double and triple hearsay) that would be offered for the truth of the matter asserted (*i.e.*, the depictions of the seizures). As the Supreme Court has instructed in *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998), the jury cannot substitute its own assessment of the risk for the decision makers'.  Enticing it to do so based on wholly unreliable hearsay compounds the prejudice.  Finally, because Defendant has the burden of proof on direct threat, it is not entitled to the inference suggested by defense counsel in his argument – that such evidence *could* factor into a direct threat defense. All of this amounts to a backdoor attempt to introduce speculative and highly prejudicial evidence which, as the record demonstrates, was not considered by Defendant when it terminated Fultz.

For all of these reasons, the court must exclude all testimony and argument relating to any descriptions of seizures received by Dan McDaniel, Timothy Peifley, and Ted Armstrong.[1]

---

[1] This would include testimony from former Human Resources Manager Jenifer Lazor and former Safety Director Corey Williams that they provided information to McDaniel, Peifley, and Armstrong about Fultz's seizures. Neither Lazor nor Williams was a decision maker with regard to Fultz's termination. *See* Lazor Dep., Ex. 5, at p. 161. Moreover, Defendant has admitted, through its responses to Plaintiffs' requests for admissions, that Williams was neither consulted about nor made aware of Rowekamp's findings. Ex. 6.

Respectfully submitted,


_____/s/_____
Maria Luisa Morocco
Supervisory Trial Attorney

UNITED STATES
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Baltimore Field Office
10 S. Howard Street
3rd Floor
Baltimore, Maryland  21201
maria.morocco@eeoc.gov
(410) 209-2730 (phone)
(410) 962-4270 (fax)


*/s/*_____
Jeremy P. Monteiro, #17459
Webster, Fredrickson, Correia & Puth, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510
jmonteiro@wfcplaw.com
Counsel for Christopher Fultz